UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/18/2020

CARL SILVERMAN, individually and
derivatively on behalf of NEW SKYLINE
PARTNERS, LLC,

      Plaintiff,

   -against-

3D TOTAL SOLUTIONS, INC.; 3D TOTAL
SOLUTIONS LIMITED; GLENN LAFAYE;
MICHAEL SHAW; RICHARD EPSTEIN;
JAMES ENDEE; DAVID HOSTELLEY; and
JASON PERKES,

      Defendants,

    and

NEW SKYLINE PARTNERS, LLC,

      Nominal Defendant.

18 Civ. 10231 (AT)

**ORDER**

ANALISA TORRES, District Judge:

  Plaintiff, Carl Silverman, brings this action against Defendants, 3D Total Solutions, Inc.,

3D Total Solutions Limited, Glenn Lafaye, Michael Shaw, Richard Epstein, James Endee, David

Hostelley, and Jason Perkes, alleging violations of federal securities laws and common law. *See*

Compl., ECF No. 57. Plaintiff claims that Defendants fraudulently induced him to contribute

and loan money to an investment fund, New Skyline Partners, LLC ("NSP" or the "Fund"),

which improperly used his money to finance two companies specializing in three-dimensional

printing. *See id.* Plaintiff brings this action directly, and derivatively on behalf of NSP. *Id.* ¶ 1.

All individual defendants except Epstein moved to dismiss Plaintiff's amended complaint. ECF

Nos. 64, 65, 66, 69, 85. The Court referred those motions to the Honorable Gabriel W.

Gorenstein for a Report and Recommendation ("R&R"). ECF No. 37. Before the Court are

Plaintiff's objections to the R&R, which recommends that the Court grant the motions to dismiss. *See generally* Pl. Obj., ECF No. 94; *see also* R&R, ECF No. 93. For the reasons stated below, Plaintiff's objections are OVERRULED and the R&R is ADOPTED in full.

## BACKGROUND[1]

Glenn Lafaye, NSP's managing member and sole director formed NSP, an investment fund, in May 2012. R&R at 3. Lafaye and NSP employed Michael Shaw to recruit individuals to participate in the Fund. *Id.* In March 2013, Lafaye formed 3D Total Solutions, Inc. Richard Epstein, who is Lafaye's father-in-law, is the former President, Chief Executive Officer ("CEO"), and sole director of 3D Total Solutions, Inc.; James Endee is the current President, CEO, and Director; and David Hostelley is the Chief Financial Officer. *Id.* In October 2013, Lafaye, Epstein, Endee, and Hostelley formed 3D Total Solutions Limited, a subsidiary of 3D Total Solutions, Inc. *Id.* Jason Perkes is a shareholder of 3D Total Solutions Limited. *Id.*

In the summer of 2012, Shaw approached Plaintiff and told him that the Fund was seeking investors. *Id.* Shaw introduced Plaintiff to Lafaye, who travelled to New York on various occasions to talk to Plaintiff about investing in the Fund. *Id.* In August 2012, Plaintiff agreed to invest $200,000 in the Fund, and in December 2012, invested an additional $40,000. *Id.* at 4. Participation in the Fund was primarily through an offering memorandum dated June 2012 (the "Offering Memorandum"). *Id.* An operating agreement (the "Operating Agreement") dated June 1, 2012 governed the operation of the Fund. *Id.*

---

[1] The Court presumes familiarity with the facts and procedural history as set forth in the R&R, *see* R&R at 2–8, but will reiterate some key factual allegations here. Because the parties have not objected to the R&R's characterization of the background facts as alleged in Plaintiff's complaint, the Court adopts the R&R's "Background" section and takes the facts characterized therein as true. *See Roberts ex rel. Phillip v. Happiness Is Camping, Inc.*, No. 10 Civ. 4548, 2012 WL 844331, at *1 (S.D.N.Y. Mar. 13, 2012).

After Plaintiff's last investment in the Fund, Lafaye created 3D Total Solutions, Inc., and later 3D Total Solutions, Limited (together the "3D Entities"). *Id.* at 4–5. Through the Fund, Lafaye invested in the 3D Entities. Plaintiff alleges that Lafaye sought to disguise his connection to the 3D Entities, in order "to disguise the conflict of interest." *Id.* at 4–5 (quoting Compl. ¶ 38.) He alleges that Lafaye used the Fund "as his personal piggybank to fund" the 3D Entities. *Id.* at 5 (quoting Compl. ¶ 43). Lafaye never disclosed to Plaintiff that he created, owned, or controlled the 3D Entities. *Id.* Plaintiff believes that his capital account with the Fund was specifically targeted and used to bankroll the 3D Entities. *Id.* Ultimately, 3D Total Solutions, Inc. failed. *Id.* at 6.

Plaintiff alleges that the Offering Memorandum "sought to lull potential investors" into believing that the Fund would invest in variety of vehicles, when in reality, the Fund was being used to invest in entities owned or controlled by Lafaye. *Id.* (quoting Compl. ¶ 58). Until June 2018, Plaintiff "had been under the impression, by information provided to him by . . . Lafaye, that 3D Total Solutions, Inc. was discovered by Defendant Lafaye as an investment opportunity, and that the persons or persons who started 3D Total Solutions, Inc. were experienced in the field of three dimensional printing." *Id.* (quoting Compl. ¶ 72).

On November 2, 2018, Plaintiff initiated this action. ECF No. 1. In December 2018, Endee and Hostelley moved to dismiss the complaint. *See* ECF Nos. 14, 23. Lafaye, Shaw, and Perkes moved to dismiss in February 2019. ECF Nos. 42, 48. In response, Plaintiff moved to amend his complaint. ECF No. 51. The Court granted the motion and considered the pending motions to dismiss to be withdrawn. ECF No. 58. After the first amended complaint was filed on March 28, 2019, Compl., the individual Defendants, except for Epstein, moved to dismiss. R&R at 7.

**DISCUSSION**

I.      Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a party makes specific objections, the court reviews *de novo* those portions of the report and recommendation that have been properly objected to. *Id.*; Fed. R. Civ. P. 72(b)(3). However, "when a party makes only conclusory or general objections, or simply reiterates his original arguments," the court reviews the report and recommendation strictly for clear error. *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014); *see also Bailey v. U.S. Citizenship & Immigration Serv.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings in the [report and recommendation] do not trigger *de novo* review."). An order is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks and citation omitted).

In addition, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014). The court may adopt those portions of the report and recommendation to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (internal quotation marks and citation omitted).

II.    Plaintiff's Objections

    A.  Construing the Allegations in the Complaint

In deciding a motion to dismiss, a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003) (internal quotation marks, citation and alterations omitted); *see also* R&R at 2 (citing *Crawford v. Cuomo*, 796 F.3d 252, 255 (2d Cir. 2015)).  Plaintiff's first objection states that Judge Gorenstein "repeatedly construed facts and drew inferences out of [Plaintiff's] favor," as "set forth more fully" in Plaintiff's other objections.  Pl. Obj. at 11.  "[O]bjections that are not clearly aimed at particular findings in the R&R do not trigger *de novo* review." *Bailey*, 2014 WL 2855041, at *1 (alteration omitted).  A "merely perfunctory response[]" does "not supply issues worthy of departure from clear error review." *Stubbs v. de Simone*, No. 04 Civ. 5755, 2005 WL 2429913, at *2 (S.D.N.Y. Sept. 30, 2005) (internal quotation marks, citation, and alterations omitted).  Plaintiff's objection is reviewed for clear error and the Court finds none.

Accordingly, Plaintiff's objection that the magistrate judge failed to construe facts and inferences in Plaintiff's favor is OVERRULED.

    B.  Application of Section 10(b)

Plaintiff argues that Judge Gorenstein erred by applying Section 10(b) in a "highly technical manner," claiming that he looked at "each material misrepresentation in a vacuum," instead of considering the "total mix" of information available to Plaintiff.  Pl. Obj. at 11.  Again, Plaintiff notes that error is "set forth more fully" in Plaintiff's other objections. *Id.*  For the same reasons discussed above, the Court finds that this general critique of the R&R does not call for a departure from clear error review, and the Court finds none.

Accordingly, Plaintiff's objection that the Judge Gorenstein applied section 10(b) in a highly technical manner is OVERRULED.

### C.  Claims Against Defendant Lafaye

Plaintiff raises several objections to Judge Gorenstein's conclusion that Plaintiff failed to state a claim against Defendant Lafaye for violations of section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5.  Pl. Obj. at 12–18.  Section 10(b) of the Exchange Act makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security . . . [,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  Rule 10b-5, promulgated pursuant to Section 10(b), prohibits "mak[ing] any untrue statement of a material fact or . . . omit[ing] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" or "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 156–57 (2008) (quoting 17 CFR § 240.10b–5) (internal quotation marks omitted).

To state a claim under Rule 10b-5, a plaintiff must show: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (internal quotation marks and citation omitted).  "A complaint alleging securities fraud under § 10(b) of the Exchange Act must satisfy

the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995" and "specify each misleading statement and state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (internal quotation marks, citation and alterations omitted).

Because the complaint is unclear as to which specific alleged misrepresentations or omissions form the basis of Plaintiff's securities law claims, Judge Gorenstein analyzed five alleged misrepresentations as to Lafaye that Plaintiff relied on in his opposition to the motion to dismiss. *See* Pl. Opp., ECF No. 78.

(1) The Operating Agreement provided that Lafaye, "[i]n carrying out his duties and exercising his powers" as managing member, would "exercise good faith" and "act at all times in the best interests of the [i]nvesting [m]embers." Compl. ¶ 62; *see* Pl. Opp. at 15–16.

(2) The Offering Memorandum provided that the "investment objective of the Fund" was to trade securities "on recognized exchanges . . . and/or with generally recognized financial instructions as counterparties," and that the Fund would meet this objective by employing long and short positions in those securities. Compl. ¶¶ 63–64; *see* Pl. Opp. at 16.

(3) The Offering Memorandum falsely stated that "the investment objective of the Fund" was "to realize gains through the purchase and sale of" certain "financial instruments," and that the Fund would "have 35 to 60 percent of its capital in its five largest core long positions." Compl. ¶¶ 62–64; *see* Pl. Opp. at 8–9.

(4) Plaintiff was "under the impression, by information provided to him by" Lafaye that 3D Total Solutions, Inc. was "discovered" by Lafaye "as an investment opportunity," and Silverman never disclosed that Lafaye in fact controlled and/or owned 3D Total Solutions, Inc. Compl. ¶¶ 47–48, 72; *see* Pl. Opp. at 5–6, 16–17.

(5) Lafaye "falsely stated" in an email dated June 20, 2013, "that the Fund was 'up around 17-20% so far.'" Compl. ¶ 108; *see* Pl. Opp. at 17.

As discussed more fully below, the Court adopts Judge Gorenstein's holding that these statements are not actionable misrepresentations or omissions under Section 10(b) and overrules Plaintiff's objections. *See* R&R at 13–19.

### 1. Statements (1), (2), and (3)

#### a. Materiality

To establish a securities fraud claim, "a plaintiff must first identify 'an actual statement, one that is either 'untrue' outright or that is 'misleading' by virtue of what it omits to state.'" *Ong v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 141, 2017 WL 933108, at *8 (S.D.N.Y. Mar. 8, 2017) (quoting *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016) (alterations omitted)). Identifying a false or misleading statement is the "first step of the inquiry." *Id.* at *9. A plaintiff, however, "must also plead materiality." *Id.* In determining whether an allegedly false statement or omissions of fact is material, the Court looks at whether there is "a substantial likelihood that a statement or omission significantly altered the total mix of information made available, as viewed by the reasonable investor." *Ellenburg v. JA Solar Holdings Co.*, No. 08 Civ. 10475, 2010 WL 1983375, at *5 (S.D.N.Y. May 17, 2010) (internal quotation marks and citation omitted).

Plaintiff argues that Judge Gorenstein failed to consider whether the total mix of facts available to Plaintiff was altered by the alleged false statements and omissions made by Defendant Lafaye. Pl. Obj. at 12. Plaintiff's objection, therefore, is based on the materiality of the alleged statements. But Judge Gorenstein did not rule that statements (1), (2), and (3) were immaterial—he ruled that that those statements were not false to begin with. *See* R&R at 13–14 ("Statements (1), (2), and (3) are not actionable misrepresentations under Section 10(b) . . . [Plaintiff] has not adequately alleged that [these statements] were misrepresentations or omissions or why the statements were fraudulent." (internal quotation marks and citation omitted)). Judge Gorenstein's holding that statements (1), (2), and (3) did not constitute actionable misrepresentations came at the first part of the inquiry, concluding that Plaintiff had failed to identify any false or misleading statement. *Ong*, 2017 WL 933108, at *8. Plaintiff's objection is aimed at the second step of the inquiry—whether the alleged misstatement or omission was material. Judge Gorenstein did not need to opine on the materiality of the statements, having found them to not be false or misleading in the first place. *See* R&R at 14–16. Plaintiff's objection, therefore, is not aimed at a particular finding in the R&R and is reviewed for clear error. *See Bailey*, 2014 WL 2855041, at *1. The Court finds none.

Accordingly, Plaintiff's objection that Judge Gorenstein did not consider whether the total mix of facts available to him were altered by the alleged false statements and omissions is OVERRULED.

### b. Fraudulent Statements

Plaintiff further argues that had Judge Gorenstein considered the alteration of the total mix of facts, it would be clear that this "mix of facts directly were implicated in the suitability of [Plaintiff's] purchase into the Fund." Plaintiff's objection is overruled for two reasons. First, as

the Court has already explained, the "mix of facts" question goes to whether a misrepresentation is material and here, Judge Gorenstein concluded, and this Court agrees, that the statements identified by Plaintiff are not misrepresentations. Second, Plaintiff raises for the first time in his objection the argument that the facts alleged by Plaintiff properly allege a "suitability" claim. Plaintiff did not raise this argument in his opposition papers to the motion to dismiss, *see generally* Pl. Opp., and "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli*, 2014 WL 2440771, at *5.

Accordingly, Plaintiff's objection that Judge Gorenstein should have considered the total mix of facts and that the complaint establishes a suitability claim is OVERRULED.

### c. Lafaye's Investing Authority

Next, Plaintiff objects to Judge Gorenstein's holding that Lafaye had authority to engage in a "substantially unrestricted range of investments," Pl. Obj. at 15 (quoting R&R at 15), which rendered any statements regarding specific investment strategies inactionable. Plaintiff objects that this finding was incorrect because the Operating Agreement provided that Lafaye, "in carrying out his duties and exercising his powers . . . shall exercise good faith and shall act at all times in the best interests of [i]nvestnig [m]embers." *Id.* (quoting Compl. ¶ 62).

Plaintiff's objection fails for two reasons. First, a defendant's generalized statements and assurances regarding investment strategies associated with a particular investment account have been found to be inadequate under Rule 9(b) to plead an actionable statement under Section 10(b). *See, e.g.*, *Bogart v. Shearson Lehman Bros.*, 1993 WL 33643, at *5 (S.D.N.Y. Feb. 3, 1993) ("[G]eneral statements about [defendant's] knowledge and competence and general assurances that plaintiff's account would be handled in his best interests and so as to minimize

risk[] . . . are insufficient to form a basis for a claim under Section 10(b).").  The Court agrees with Judge Gorenstein that the statement in the Operating Agreement, which indicates that Lafaye was to exercise good faith and act in the best interest of its members, does not constitute an actionable statement under Section 10(b).  *See* R&R at 14.

Second, Judge Gorenstein's conclusion that Lafaye had authority to engage in "a substantially unrestricted range of investments" is plainly consistent with the language in the Offering Memorandum.[2]  ECF No. 71-1 at 4 ("Investors should note that the Operating Agreement authorizes [NSP] to trade or invest in, directly or indirectly, a substantially unrestricted range of instruments and/or pursuant to strategies other than those described above, and [Lafaye] specifically reserves those rights.").  Judge Gorenstein's holding that Lafaye had extensive authority with respect to investment decisions, rendering any statements regarding specific investment strategies inactionable, is, therefore, correct.

Accordingly, Plaintiff's objection to Judge Gorenstein's conclusion regarding Lafaye's investing authority is OVERRULED.

### d.  The Specificity of Statement (3)

"[S]tatements that are too vague or general or are merely reflections of corporate puffery are not actionable."  *Lopez v. Ctpartners Executive Search Inc.*, 173 F. Supp. 3d 12, 27–28 (S.D.N.Y. 2016).  This is because "[t]o be 'material' within the meaning of § 10(b), the alleged misstatement must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome which, when it proves false or does not occur, forms the basis for a § 10(b) fraud claim."  *City of Pontiac*, 752 F.3d at 185.

---

[2] The Court considers the Offering Memorandum for the purposes of evaluating Defendants' motions to dismiss because the plaintiff knew about and relied upon it in bringing suit.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Statement (3) speaks to the objectives of the Fund, describing it as "realiz[ing] gains through the purchase and sale of" certain "financial instruments," and that the Fund would "have 35 to 60 percent of its capital in its five largest core long positions." Compl. ¶¶ 62–64. Judge Gorenstein concluded that this statement was not sufficiently specific to constitute a misrepresentation under Section 10(b). R&R at 16. Plaintiff argues that Statement (3) is more specific than Judge Gorenstein recognizes, because it says that the Fund will "realize gains through the purchase and sale of financial instruments of all types including; stocks, indices, options and other derivative instruments traded on recognized exchanges throughout the world and/or with generally recognized financial institutions as counterparties." *See* Pl. Obj. at 15; Compl. ¶ 63.

This additional language, however, is not specific at all. First, the statement contains an inexhaustive list of financial instruments that the Fund might purchase or sell, one of which, "other derivative instruments traded on recognized exchanges," is a catchall phrase. Second, that the Fund would buy or sell instruments on "recognized exchanges throughout the world" is similarly broad and lacks any limiting principle. Lastly, that the Fund would purchase or sell with "*generally* recognized financial institutions as counterparties" is a statement, which includes the word general. These are not the type of statements "an investor could reasonably rely on as a guarantee of some concrete fact or outcome." *City of Pontiac*, 752 F.3d at 185. Under these circumstances, Judge Gorenstein was correct to hold that Statement 3 was not sufficiently specific to constitute a misrepresentation under Section 10(b). *See* R&R at 16.

Accordingly, Plaintiff's objection that Statement (3) is sufficiently specific is OVERRULED.

### e. Plaintiff's Multiple Investments

Plaintiff objects to Judge Gorenstein's finding that the alleged false statements and omissions made by Lafaye only applied to Plaintiff's initial investment. Plaintiff argues that the allegations in the complaint, construed in his favor, indicate that he did not make just one initial investment in the Fund, but that he made an additional investment and remained invested based on the materially false statements and omissions made by Lafaye. Pl. Obj. at 16.

Plaintiff's objection fails because it is premised on the assumption that Lafaye's statements were false. But this Court agrees with Judge Gorenstein that Plaintiff has failed to identify any misrepresentations or false statements made by Lafaye. Whether Lafaye's statements caused Plaintiff to invest in the Fund is beside the point, because the statements are not false, and, therefore, are not actionable statements under Section 10(b).

Accordingly, Plaintiff's objection that Judge Gorenstein erred in finding that the false statements and omissions applied only to Plaintiff's initial investment is OVERRULED.

### 2. Investments in 3DTotal Solutions, Inc.

A complaint alleging securities fraud under Section 10(b) must satisfy the heightened pleading requirements of Rule 9(b). *City of Pontiac*, 752 F.3d at 184. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Statement (4) concerns alleged material representations and omissions made by Lafaye to Plaintiff regarding 3D Total Solutions, Inc. Plaintiff alleges that he was "under the impression, by information provided to him by" Lafaye that 3D Total Solutions, Inc. was "discovered" by Lafaye "as an investment opportunity." Compl. ¶¶ 47–48, 72. Judge Gorenstein concluded that although Plaintiff alleges that he was under this impression, Plaintiff never identifies the actual

statements made by Lafaye that gave him this impression, or even any particulars as to those statements.  R&R at 16–17.  He held that the "vagueness of the circumstances surrounding the representation by itself is sufficient to fail to meet the particularity requirement" of Rule 9(b).  *Id.* at 17.

Plaintiff objects, arguing that he did in fact state a claim with respect to Statement (4) because once "Lafaye conveyed information regarding the Fund and its investments, he had a duty to tell the whole truth."  Pl. Obj. at 17.  And although Plaintiff is correct that once a party "makes a disclosure about a particular topic . . . the representation must be complete and accurate," *In re Morgan Stanley Info. Fund Sec. Litig.,* 592 F.3d 347, 366 (2d Cir.2010) (internal citations and quotation marks omitted), Plaintiff's complaint fails to identify the "disclosure" Lafaye allegedly made to him regarding 3D Total Solutions, Inc.  Judge Gorenstein was correct, therefore, that Statement (4) was not actionable under Section 10(b) because the complaint fails to "specify the statements that the plaintiff contends were fraudulent" and fails to "state where and when the statements were made," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citation omitted), as required by the heightened pleading standard of Rule 9(b).  *See, e.g.*, *Vivendi*, 838 F.3d at 239 ("[T]o support a finding of liability, Rule 10b-5 expressly requires an actual statement, one that is either 'untrue' outright or 'misleading' by virtue of what it omits to state."); *Doscher v. Sobel & Co., LLC*, 2015 WL 774695, at *4 (S.D.N.Y. Feb. 11, 2015) ("[I]n order to survive a motion to dismiss under a theory of actionable omission, [a plaintiff] must specify a statement that is alleged to be materially misleading because of the information it omits." (internal quotation marks and citation omitted)).

Accordingly, Plaintiff's objection that Statement (4) stated a claim under Section 10(b) is OVERRULED.

### 3. Statement That Fund was "up around 17-20%"

"Under section 10(b) of the Securities and Exchange Act of 1934, liability is imposed for manipulation or deception in connection with the purchase or sale of any security." *Manela v. Gottlieb*, No. 91 Civ. 5510, 1993 WL 8176, at *4 (S.D.N.Y. Jan. 4, 1993) (internal quotation marks omitted). "A securities fraud claim under section 10(b) must rest predominantly upon the defendant's conduct prior to the completion of the purchase and sale of the securities that are subject of the action." *Id.* at *5 (internal quotation marks and citation omitted).

Plaintiff claims that he was defrauded in connection with his "purchase" or "acquisition[]" of shares of the Fund. Compl. ¶¶ 95, 99. Plaintiff made his last investment in the Fund in December 2012. *Id.* ¶ 32. One of the statements Plaintiff uses to support his claim that he was defrauded in connection with the purchase of shares is Lafaye's statement, made in an email dated June 20, 2013, "that the Fund was 'up around 17-20% so far.'" Compl. ¶ 108. Judge Gorenstein held that this statement was not actionable under Section 10(b) and Rule 10b-5 because it occurred several months after Plaintiff purchased the shares. R&R at 18. Plaintiff objects, arguing that this statement was actionable because Plaintiff considered the statement when he decided to remain invested in the Fund. Pl. Obj. at 18. Even if Plaintiff is correct that he remained invested because of the June 20, 2013 email, it would be irrelevant; it is clear that such a statement could not have induced Plaintiff to purchase or acquire the shares, because it is not conduct that took place "prior to the completion of the purchase and sale of the" shares of the Fund at issue here. *Manela*, 1993 WL 8176, at *4. "For purposes of a Rule 10b-5 claim, events occurring after the commitment to purchase stock has been made are irrelevant." *Pittsburgh*

*Coke & Chem. Co. v. Bollo*, 421 F. Supp. 908, 923 (E.D.N.Y. 1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977).

Accordingly, Plaintiff's objection that Statement (5) stated an actionable claim under section 10(b) is OVERRULED.

### D. Section 20(a) of the Exchange Act

"Under Section 20(a) of the Exchange Act, a person exercising 'control' over a person liable under § 10(b) is also liable, subject only to the defense of 'good faith.'" *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 488 (S.D.N.Y. 2011) (quoting 15 U.S.C. § 78t(a)). Judge Gorenstein held that there was no violation of Section 20(a) of the Exchange Act as there was no primary violation a Section 10(b) and Rule 10b-5. R&R at 22. Plaintiff objects to that holding on the grounds that Judge Gorenstein erred in finding that there was no primary violation of Section 10(b) and Rule 10b-5. Pl. Obj. at 19. Because the Court overruled Plaintiff's objections regarding the Section 10(b) and Rule 10b-5 claims, and adopted Judge Gorenstein's holding that there was no primary violation of Section 10(b) and Rule 10b-5, the Court also adopts Judge Gorenstein's holding that there was no violation of Section 20(a) of the Exchange Act, and Plaintiff's objection arguing otherwise is OVERRULED.

### E. Common Law Fraud

To state a claim for common law fraud under New York law, a plaintiff must show:

> (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss.

*Ross v. Louise Wise Servs.*, 8 N.Y.3d 478, 488 (2007) (internal quotation marks, citation, and alterations omitted); *see also* R&R at 22–23. Judge Gorenstein held that Plaintiff's common law

fraud claim suffers from the same defects as his Section 10(b) and Rule 10b-5 claims, including the failure to plead a false representation with the specificity required by Rule 9(b), and, should, therefore, be dismissed.  R&R at 23.

Plaintiff argues that the magistrate erred by "applying the elements of a Section 10(b)/Rule 10b-5 claim [to] that of a common law fraud claim."  Pl. Obj. at 19.  But this is not what Judge Gorenstein did.  Judge Gorenstein identified the elements of a common law fraud claim, R&R at 22–23, applied the factual allegations to those elements—the same factual allegations relevant to the Section 10(b) and Rule 10b-5 claims—and concluded that the allegations fail to state a common law fraud claim.  *See id.* at 23.  The Court agrees.

Accordingly, Plaintiff's objection that the magistrate judge erred in finding that Plaintiff did not demonstrate that the complaint stated a claim for common law fraud is OVERRULED.

### F.   Negligent Misrepresentation

Like the Section 10(b) and Rule 10b-5 claims discussed above, a claim for negligent misrepresentation must also be pleaded with particularity under Rule 9(b) if based on the same set of facts as intentional fraud claims.  *See Meisel v. Grunberg*, 651 F. Supp. 2d 98, 108 (S.D.N.Y. 2009).  Plaintiff's objection that Judge Gorenstein erred in finding that Plaintiff has not stated a claim for negligent misrepresentation relies on this Court rejecting Judge Gorenstein's conclusion that the statements analyzed for purposes of the Section 10(b) and Rule 10b-5 claims were not pleaded with the requisite particularity.  Pl. Obj. at 20.

Accordingly, because the Court has fully adopted Judge Gorenstein's holding that those statements were not pleaded with the requisite particularity, Plaintiff's objection is OVERRULED.

G.  Breach of Fiduciary Duty

A claim for breach of a fiduciary duty under New York law requires a plaintiff to prove "the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (N.Y. App. Div. 2007) (citation omitted).  Judge Gorenstein concluded that the two types of alleged wrongdoing—the investment in the 3D Entities which were formed by Lafaye and the improper use of Plaintiff's capital account—did not constitute misconduct by Lafaye.  R&R at 26.  Plaintiff objects, arguing that the complaint contained allegations suggesting that (1) Lafaye's investment in 3D Entities constituted misconduct, and (2) Plaintiff's damages were traceable to the investment in the 3D Entities.  Pl. Obj. at 20–21.  The Court agrees with Judge Gorenstein that the allegations in the complaint do not constitute misconduct by Lafaye and overrules Plaintiff's objections.

Plaintiff contends that the Operating Agreement provides that Lafaye, "[i]n carrying out his duties and exercising his powers . . . shall exercise good faith and shall act at all times in the best interests of the [i]nvesting [m]embers."  Compl. ¶ 62.  According to Plaintiff, Lafaye's decision to invest in the 3D Entities—entities in which Lafaye had a personal interest— constituted misconduct.  Pl. Obj. at 20.  The Court has reviewed the complaint and agrees with Judge Gorenstein that "[t]here is nothing to suggest that the investment decision, even if risky as is often true for any investment in a new company, was not a reasonable one or by itself constituted misconduct."  R&R at 26.

First, there is language in the Offering Memorandum that Plaintiff did not to include in his amended complaint.  The Offering Memorandum contains various provisions that confirm the speculative nature of the investments to be made by the Fund, the breadth of discretion

afforded to Lafaye in making investment decisions, including warning investors that Lafaye may engage in activities that may conflict with the interests of the Fund. *See, e.g.*, Offering Memorandum at 1 (Lafaye "has full discretionary investment management authority over the [Fund]."); *id.* at 3–4 ("While the Company has adopted guidelines for diversifying its investment account among companies and industries, they are guidelines only and [Lafaye] is not restricted as to the percentage of the [Fund]'s assets that may be invested in any particular company or industry."); *id.* at 3 ("[Lafaye] may engage in, other activities that may conflict with the interests of the [Fund]."); *id.* at 16 ("[Lafaye] may [] invest[] for his own retirement accounts and/or family's accounts."). This language suggests that Lafaye had broad discretion to invest in the 3D Entities, notwithstanding his involvement with those companies.

Second, there is nothing in the complaint to suggest that the investment in the 3D Entities was anything more than a failed investment. This is often the case with investments in a new company. *See* R&R at 26. If the 3D Entities were a successful investment, Plaintiff would be entitled to the rewards of that investment, irrespective of Lafaye's involvement with the 3D Entities. What Plaintiff complains of, therefore, is the investment's failure, not any misconduct on the part of Lafaye. Under these circumstances, the Court holds that the complaint does not allege facts that establish Lafaye's misconduct, and, therefore, does not state a claim for breach of a fiduciary duty under New York law.

Accordingly, Plaintiff's objection that Judge Gorenstein erred in holding that Plaintiff failed to state a claim for breach of a fiduciary duty is OVERRULED.

### H. Claims Related to Breach of Fiduciary Duty

Judge Gorenstein based his decision to recommend dismissal of Plaintiff's gross negligence and mismanagement, aiding and abetting breaches of fiduciary duty, and derivative

claims on the same arguments related to Plaintiff's breach of fiduciary duty claim. R&R at 27–28, 30–32. In like manner, Plaintiff argues that these claims should have survived dismissal because his breach of fiduciary duty claim should have survived. Pl. Obj. at 22. The Court reviews these general objections for clear error and, having adopted Judge Gorenstein's holding that the complaint failed to state a claim for fiduciary duty, finds none. *Wallace*, 2014 WL 2854631, at *1.

Accordingly, Plaintiff's objections regarding the dismissal of his gross negligence and mismanagement, aiding and abetting breaches of fiduciary duty, and derivative claims are OVERRULED.

I.   Leave to Amend the Complaint

Plaintiff objects to the denial of his request for leave to amend the complaint. Pl. Obj. at 23; *see* R&R at 34. Generally, leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nonetheless, a motion to amend should be denied if there is an apparent or declared reason—such as . . . repeated failure to cure deficiencies by amendments previously allowed." *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) (internal quotation marks and citation omitted); *see also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) ("[T]he [d]istrict [c]ourt did not abuse its discretion in denying [plaintiff] leave to amend" where there were "failure[s] to cure deficiencies by amendments previously allowed." (citations and internal quotation marks omitted)). Consistent with these principles, Judge Gorenstein acknowledged that "normally leave to amend is freely given," but recommended that leave be denied here, because Plaintiff previously was given an opportunity to amend after Defendants filed a motion to dismiss, which pointed out the defects in the original complaint. R&R at 34.

Under these circumstances, the Court agrees with Judge Gorenstein and finds that leave to amend should be denied.

Accordingly, Plaintiff's objection to the denial of leave to amend is OVERRULED.

## CONCLUSION

The Court has reviewed *de novo* those portions of the R&R to which Plaintiff properly objected and has reviewed the remainder of the R&R for clear error.[3]  For the reasons stated above, the Court ADOPTS the R&R in its entirety and GRANTS Defendants' motions to dismiss.

The Clerk of Court is directed to terminate the motions at ECF Nos. 66, 69, 83, and 85.

SO ORDERED.

Dated: March 18, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[3]  To the extent not discussed above, the Court finds no clear error in the unchallenged portions of the R&R.  This includes Judge Gorenstein's holding that Plaintiff's motion to strike certain documents submitted by Defendants as part of the briefing of the motion to dismiss be denied as moot.  *See* R&R at 34–35; *see also* ECF No. 83.  Judge Gorenstein concluded that it was not necessary to consider these documents in resolving the motions to dismiss.  Plaintiff did not object to this finding.  The Court, therefore, reviews for clear error and finds none.